UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

POLLY OLSEN
2012 Vine St. Apt C
Green Bay, WI 54302,                                                    Case No.  18-

                              Plaintiff,

        v.

NORTHEAST WISCONSIN TECHNICAL COLLEGE DISTRICT BOARD
5765 KZ Lane
Oconto Falls, WI 54154

H. JEFFREY RAFN and
COLLEEN SIMPSON,
in their official capacities as officers and employees of Northeast Wisconsin Technical College,

RANDY SCHULTZ,
MIKE JANDRIN, and
JESSE HAGEL,
in their personal capacities and official capacities as officers and employees of Northeast
Wisconsin Technical College,

CARLA HEDTKE,
KIM SCHANOCK,
GERALD WORRICK,
CATHY DWORAK,
DAVID MAYER,
JEFF RICKABY,
DOROTHY SADOWSKI,
RICHARD STADELMAN, and
BEN VILLARRUEL,
in their official capacities as Members of the District Board of  Northeast Wisconsin Technical
College,
                              Defendants.

## COMPLAINT

        Plaintiff Polly Olsen, by and through her undersigned counsel, brings this Complaint

against the Defendants, Northeast Wisconsin Technical College District Board, H. Jeffrey Rafn,

Colleen Simpson, Randy Schultz, Mike Jandrin, and Jesse Hagel, and the NWTC District

Board members. In support of this Complaint, Plaintiff alleges as follows:

## INTRODUCTION

1.     This is a civil rights action under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution, brought to remedy a violation of the constitutional rights of the Plaintiff, Polly Olsen. The Defendants have maintained and enforced a set of policies that unconstitutionally restrict the First Amendment rights of the Plaintiff and other students at Northeast Wisconsin Technical College by, among other things, restricting expressive activities to a tiny portion of campus, requiring prior approval even within that tiny area, and arrogating to administrators unfettered discretion as to whether to confer that approval, and enacting broad and vague restrictions on speech throughout campus. The Defendants unconstitutionally applied these policies to Plaintiff's expressive activities and, unless this Court intervenes, will continue to do so. Moreover, the Defendants applied these unconstitutional restrictions based upon the viewpoint expressed by the Plaintiff. This action seeks declaratory and injunctive relief, damages and attorneys' fees.

## JURISDICTION AND VENUE

2.     The cause of action in this case arises under the Constitution and laws of the United States, and subject matter jurisdiction is therefore proper under 28 U.S.C. §§ 1331 and 1343. This Court has authority to grant the requested declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57. It has authority to issue injunctive relief pursuant to 42 U.S.C. § 1983 and Fed. R. Civ. P 65. It has authority to award attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

3.     All events or omissions giving rise to this cause of action occurred in the City of Green Bay, Wisconsin, which is within the Eastern District of Wisconsin. Venue is therefore

proper under 18 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

### *The Parties*

4.      The Plaintiff, Polly Olsen, is an adult citizen and resident of the United States and the State of Wisconsin. She resides at 2012 Vine St. Apt C, Green Bay, WI, 54302. Ms. Olsen is a student at Northeast Wisconsin Technical College (NWTC). She was enrolled in classes during the Spring Semester of 2018 and will continue her studies in the Fall Semester of 2018. Ms. Olsen attends classes at the college's Green Bay campus.

5.      Defendant Northeast Wisconsin Technical College District Board is in charge of the technical colleges in the District (Wis. Stat. § 38.01) and may sue and be sued in the name of the district (Wis. Stat. § 38.14).

6.      Northeast Wisconsin Technical College District is one of sixteen districts that operate a statewide plan for vocational, technical, and adult education, and serves all or parts of nine counties in Northeast Wisconsin. It is governed by its District Board which has exclusive control over the policy-making operations that govern the District.

7.      Defendants H. Jeffrey Rafn and Colleen Simpson are, respectively, President and Vice President of Student Services of NWTC. They are sued in their official capacities.

8.      Defendant Randy Schultz is Security Coordinator, Defendant Mike Jandrin is Security Supervisor, and Defendant Jesse Hagel is a Security Officer at NWTC. They are sued in their personal and official capacities.

9.      Defendants Carla Hedtke, Kim Schanock, Gerald Worrick, Cathy Dworak, David Mayer, Jeff Rickaby, Dorothy Sadowski, Richard Stadelman, and Ben Villarruel are members of the District Board of Northeast Wisconsin Technical College. Each of them is sued in their

official capacity as Board Members.

10.     At all times pertinent and with respect to all matters alleged herein, each of the Defendants acted under color of state law.

11.     Unless otherwise indicated or clear from the context, all of the Defendants shall be referred to collectively hereinafter as "NWTC."

<u>*The Events of February 14, 2018*</u>

12.     Based on her religious beliefs and in honor of her mother's custom, Ms. Olsen has on several occasions passed out religiously-themed Valentine's Day cards on Valentine's Day around the NWTC campus.

13.     On February 14, 2018, Valentine's Day, Ms. Olsen walked through freely accessible areas on NWTC's Green Bay campus – areas that are open to students – and handed out religiously-themed Valentine's Day cards to friends and NWTC staff.

14.     The Valentines that Ms. Olsen handed out were heart-shaped and contained messages like; "You are special! 1 John 4:11," God is love 1 John 4:11," "Jesus loves you! Romans 5:8," and "You are loved and cared for! 1 Peter 5:7." True and correct copies of some of those Valentines are attached hereto as Exhibit A.

15.     The Valentines were approximately three inches by three inches in size, or smaller.

16.     Ms. Olsen was not selling the Valentines, soliciting donations, or asking the recipients for anything. Everyone was free to decline them.

17.     An unidentified person telephoned the NWTC Office of Safety & Security and, per the NWTC Security Office report, complained that a female student (Ms. Olsen) was handing out Valentine's Day cards with Bible references on the cards in the area of the General Studies

4

Office. The Security Office report characterized that complaint as one involving "suspicious activity and/or person." A true and correct copy of the security report is attached hereto as Exhibit B.

18.     At this point, Supervisor Mike Jandrin "immediately accessed the security camera for this area to see if this student was captured on video." He also dispatched Security Officer Jesse Hagel to the General Studies Office Area to locate the student and bring her to the Security Office, indicating that according to the telephone complaint, the suspicious student was "wearing a red dress." (Ex. B.)

19.     There is nothing under Wisconsin law or the rules of NWTC which would make "handing out Valentine's Day cards with bible references" illegal or constitute "suspicious activity" or make the female student handing out such Valentines on Valentine's Day a "suspicious person."

20.     As directed by his supervisor, Officer Hagel located Ms. Olsen, told her that her actions constituted "soliciting" and were a violation of NWTC's Public Assembly Policy (the "Policy") (a true and correct copy of the Policy is attached hereto as Exhibit C) and escorted her to the NWTC Security Office.

21.     Upon arrival at the Security Office, Supervisor Jandrin told Ms. Olsen that some people might consider her actions to be soliciting or find the Bible references on her cards to be offensive. (Ex. B.)

22.     Supervisor Jandrin and Security Coordinator Randy Schultz further told Ms. Olsen that the reason she had been brought to the Security office for a conversation was for "(possibly) disturbing the learning environment and walking into an area that is restricted to students without being invited or announced." (Ex. B.)

5

23. Ms. Olsen had not handed out Valentines during any class, in the library, or in any area where students were in a learning environment.

24. Any claim that Ms. Olsen disturbed or disrupted the learning environment by handing out religiously-themed Valentines is false.

25. Ms. Olsen did not walk into any area to which access by students was restricted.

26. To the contrary, she walked through a number of areas in the NWTC Student Center handing out Valentines. The NWTC Student Center, as its name indicates, is a part of the NWTC campus that serves a number of needs for its students. It has student common areas, lounge areas, a cafeteria, a coffee shop, and certain offices providing student services, including offices known as the General Studies Office.

27. Ms. Olsen handed out Valentines in various areas of the NWTC Student Center. On information and belief, when Supervisor Jandrin and Security Coordinator Schultz told her that she had entered an area in which access by students is restricted without being invited or announced, they were referring to the General Studies Office in the Student Center.

28. Prior to Valentine's Day in 2018, Ms. Olsen had been in the General Studies Offices many times because she knew some of the people that worked there, including Cassie Reed.

29. Ms. Olsen was never told that any part of the General Studies Office was restricted or that she could only enter that area after being invited or announced.

30. Ms. Olsen had freely entered the General Studies Offices in the past, both on school business and for personal reasons, without questions or comment from office staff and has seen many other students do the same.

31.     Ms. Olsen has the right to hand out Valentine's Day cards with Bible references in any area of the NWTC campus where she has the right to be present. Such conduct is expressive conduct protected by the First Amendment.

32.     Ms. Olsen was told by NWTC that her activities on Valentine's Day of 2018 in handing out religiously-themed Valentine's Day cards were improper soliciting and a violation of the Policy. As explained in more detail below, the Policy limits speech activities to a small portion of the campus. Moreover, even within the tiny area within which speech is permitted, students must apply for and obtain prior approval.

33.     Ms. Olsen desires to pass out Valentine's Day cards and other similar cards and information in areas outside NWTC's prescribed Public Assembly Area, including areas where NWTC has by policy and practice allowed and encouraged freedom of expression by a variety of other individuals and groups, without having to first request permission from the College. Ms. Olsen is prohibited from doing so under the Policy.

34.     Ms. Olsen would also like to spontaneously speak on issues occurring in the news or that are otherwise important to her, by herself or in conjunction with others, in areas outside NWTC's prescribed Public Assembly Area, including areas where NWTC has by policy and practice allowed and encouraged freedom of expression by a variety of other individuals and groups, without having to first request permission from NWTC. Ms. Olsen is prohibited from doing so under the Policy.

### NWTC's Public Assembly Policy

35.     NWTC has promulgated a Policy that regulates freedom of speech and expression on campus and applies equally to NWTC students and uninvited persons and organizations. The Policy requires each Campus and regional learning center to "designate space assigned as a

7

limited public forum referred to as the Public Assembly Area." (Ex. C.)

36.     The Public Assembly Area on the Green Bay campus is a small area located outside NWTC's main entrance and constitutes a small fraction (less than 0.5%) of the NWTC Green Bay campus area. (*See* Exhibit D attached hereto (circle by the Main Entrance and Student Center)). Upon information and belief, designation of the Public Assembly Area was done by Defendant Rafn and approved or acquiesced in by the District Board Defendants.

37.     The Policy mandates that "picketing or displaying of signs" and "mass distribution of literature" may occur only in the prescribed Public Assembly Area and with the appropriate "*request to reserve.*" The Policy allows literature, petitions, and requests for registrations to be distributed only in the Public Assembly Area and only pursuant to an approved "request to reserve," except when specifically approved otherwise by NWTC's President or his/her designee.

38.     The Policy provides that "Soliciting petitions or other attempts . . . to convey a message to a broad audience of people on college grounds outside of the public assembly area, will not be permitted."

39.     The Policy provides that, "Any acts that are disruptive to the normal operations of the College including but not limited to classes and College business or violates the rights of others will not be tolerated."

40.     The Policy does not define "soliciting," "solicitation," "mass distribution," "literature," "picketing," "displaying," "disruptive," or "limited public forum."

41.     Through its Policy, NWTC has effectively deemed all remaining indoor and outdoor areas of campus, outside the prescribed Public Assembly Area, as non-public forums off-limits for student speech and expression.

42.     Even within the tiny Public Assembly Area, NWTC restricts speech by requiring prior approval pursuant to a "request to reserve," which must be submitted and approved in all cases without regard to the number of persons wishing to speak or assemble or whether the contemplated speech activities would preclude other speakers, interfere with use of the area by others, or otherwise present any need for prior approval.

43.     The Policy does not provide any criteria by which the college shall review applications or grant permission to use the Public Assembly Area, other than to indicate that, "In most cases, use of space will be assigned to the person or organization that requests the area first."

44.     Despite this assertion, the Public Assembly Request form requires information regarding both the identity of the speaker and the content of the intended speech and provides no criteria governing how requests will be considered and approved or denied. A true and accurate copy of the Public Assembly Request form is attached hereto as Exhibit E.

## First Claim of Relief – Violation of First and Fourteenth Amendment
## (Facial Challenge – Limitation of Speech to the Public Assembly Area)

45.     Plaintiff incorporates by reference all previous paragraphs as if fully restated here.

46.     The First Amendment to the United States Constitution provides, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

47.     The First Amendment's guarantee of freedom of speech is made applicable to the States through the Fourteenth Amendment. *Gitlow v. New York*, 268 U.S. 652 (1925).

48.     Under 42 U.S.C. § 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia,

9

subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." At all times and with respect to all matters alleged herein, each of the defendants was acting under color of state law.

49.     The First Amendment is fully binding on public institutions like NWTC. *Widmar v. Vincent*, 454 U.S. 263, 268–69 (1981) ("[O]ur cases leave no doubt that the First Amendment rights of speech and association extend to the campuses of state universities."). As the United States Supreme Court has stated, "The college classroom with its surrounding environs is peculiarly the 'marketplace of ideas.'"  *Healy v. James*, 408 U.S. 169, 180 (1972). Likewise, the Supreme Court has made clear that "[n]either students [n]or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty Sch. Dist.,* 393 U.S. 503, 506 (1969).

50.     In assessing restrictions of speech on college campuses, courts often employ "forum analysis." If an area within which speech is protected is either a traditional or designated public forum, restrictions on speech are subject to strict scrutiny. *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 469-70 (2009). The Supreme Court has noted that "a university campus, at least as to its students, possesses many of the characteristics of a traditional public forum." *Cornelius*, 473 U.S. at 803.

51.     Reasonable time, place, and manner restrictions must be "justified without reference to the content of the regulated speech" and "narrowly tailored to serve a significant governmental interest," and must "leave open ample alternative channels for communication of the information." *Clark v. Cmty for Creative Non-Violence*, 468 U.S. 288, 293 (1984).

10

52.     As a public college, NWTC's campus is government property. NWTC cannot legally declare the vast majority of campus to be a "non-public forum." "Government property . . . does not automatically cease to be a designated public forum because the government restricts some speech on the property." *Hays County Guardian v. Supple*, 969 F.2d 111, 117 (5ᵗʰ Cir. 1992). The government cannot declare one area of its property a public or limited public forum and then deny access to the rest. *See University of Cincinnati Young Americans for Liberty v. Williams*, WL 2160969 (S.D. Ohio 2012) (striking down the university's policy which required prior notice for "demonstrations, picketing, and rallies" and restricted them to a limited area on campus); *Khademi v. South Orange County Community College Dist*., 194 F. Supp. 2d 1011 (C.D. Cal. 2002) (striking down policy declaring vast areas of campus off-limits for leafletting).

53.     Therefore, the public areas of public universities are generally regarded as traditional public forums – at least as to students.

54.     "In addition to traditional public fora, a public forum may be created by government designation of a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects." *Cornelius v. NAACP Legal Defense and Educational Fund, Inc*., 473 U.S. 788, 802 (1985). Such actions by the government "may . . . transform a publicly-owned property into a public forum." *Miller v. City of Cincinnati*, 622 F.3d 524, 534 (6ᵗʰ Cir. 2010).

55.     The NWTC campus has many open areas and sidewalks, as well areas inside NWTC buildings, where student speech, expressive activity, and distribution of literature would not (and does not) interfere with or disturb access to college buildings or sidewalks, impede vehicular or pedestrian traffic, or in any way substantially disrupt the operations of the campus or the college's educational functions.

11

56.     For example, the NWTC campus contains an outdoor courtyard where students frequently assemble to eat meals and converse (*See* Exhibit F attached hereto (area circled in red)). On information and belief, this outdoor area is also used for school and club events which involve large assemblies of students and staff, speakers, and distribution of literature.

57.     The NWTC campus also contains an area known as the "back patio" located outdoors and between NWTC buildings. On Wednesday, May 16, 2018, the NWTC Global Connections Club held a "Holi Festival" at this location. This event involved significant expressive activity by students including face-painting, water guns, and dancing as well as service of snacks and beverages.

58.     The NWTC campus also has an area known as the "Commons." Every semester NWTC has an "involvement fair" held in the Commons located inside the NWTC Student Center – the same building in which Ms. Olsen was handing out Valentines. During this fair, up to fifty student clubs set up tables to talk to students and distribute literature regarding their clubs.

59.     NWTC also hosts regular career fairs which are held in the Commons and in the gym and at which numerous employers set up displays, meet with students, and hand out information regarding the businesses they represent.

60.     All of the areas described above are, by nature of the areas in question, compatible with expressive activity and should be characterized as traditional public forums, particularly with respect to NWTC students. For example, the "Commons" is – as its name alleges – a common area where students congregate, socialize, assemble, and engage in a variety of expressive activity. The outdoor courtyard and back patio are similar and compatible with a variety of expressive activity which NWTC has permitted and, on numerous occasions, promoted.

61.     However, regardless of how NWTC has labeled these areas or whether they meet the standard of traditional public forums, NWTC has – by policy, practice, and intent – made these spaces available for expressive conduct on a recurring basis, and for conduct that is substantially more disruptive than Plaintiff's conduct on February 14, 2018.

62.     By virtue of the frequent use of such areas by students, staff, as well as visitors, and the robust variety of expressive conduct allowed (and encouraged) in these areas, NWTC has, by practice and intent, established these areas as designated public forums, at least for NWTC students.

63.     On information and belief, similar conduct and expressive activity occurs in many other indoor and outdoor areas across NWTC's approximately 100-acre campus. These examples show that there are numerous outdoor and indoor areas on NWTC's Green Bay campus, other than the prescribed Public Assembly Area, where expressive activity regularly takes place, does not disturb the learning environment, and in which expressive activity is therefore suitable. Under the Policy. However, NWTC denies student expression in all of these areas.

64.     NWTC has adopted policies (including but not limited to its Public Assembly Policy) and acted according to those policies in denying Ms. Olsen her right of freedom of speech and expression. The policies promulgated and enforced by NWTC have the effect of designating the overwhelming majority of the outdoor and indoor areas of NWTC's campus as non-public forums, quarantining free expression – including even the handing out of Valentine's Day cards on Valentine's Day – to a small area of campus.

65.     By making only one small area known as the "Public Assembly Area," representing a tiny fraction of the area of NWTC's Green Bay campus, available for student expression, and forbidding student expression in all other areas of campus, the NWTC Public

Assembly Policy is overbroad and provides extremely limited and insufficient alternatives for student speech.

66.     On its face, the Policy is an unconstitutional abridgment of the rights of Plaintiff and other students' freedom of speech under the First and Fourteenth Amendments to the United States Constitution.

67.     Plaintiff has a reasonable fear of prosecution and discipline under the Policy based on her desire to continue passing out Valentines outside the Public Assembly Area without submitting the required "Request to Reserve" and NWTC's past enforcement of the Policy against her.

68.     By applying this Policy to Plaintiff's conduct on February 14, 2018, NWTC violated her rights to freedom of speech and expression under the First Amendment, as applied to the States through the Fourteenth Amendment.

69.     In so doing, each of the defendants acted under color of state law and in violation of clearly established constitutional rights of which any reasonable college officer should have been aware.

## Second Claim of Relief – Violation of First and Fourteenth Amendment (Facial Challenge - Prior Restraint and Overly Broad and Vague Standards for Approval)

70.     Plaintiff incorporates by reference all previous paragraphs as if fully restated here.

71.     NWTC's Public Assembly Policy, on its face, is an unconstitutional prior restraint on freedom of speech and expression.

72.     Students have a First Amendment right to engage in expressive activities in the public areas of a state college or university without advance permission from government officials. *Widmar*, 454 U.S. at 267 n.5; *Papish v. Bd. of Curators of the Univ. of Mo.*, 410 U.S. 667 (1973). Permit requirements are a prior restraint on speech, and there is a heavy presumption

against their constitutionality. *Berger v. City of Seattle*, 569 F.3d 1029, 1037 (9th Cir. 2009); *Jews for Jesus, Inc. v. City Coll. of San Francisco*, 2009 U.S. Dist. LEXIS 1613, at \*11-12 (N.D. Cal. Jan. 12, 2009).

73.     Use of the Public Assembly Area requires a "request to reserve" which must be submitted to the NWTC Security Office.  (Exhibit E). The request form requires the name of the group or individual making the request as well as a description of the activity requested. The form contains no standards or guidelines by which NWTC reviews the request in considering whether to approve or deny it. On their face, neither the Public Assembly Policy or the Public Assembly Request form limit the NWTC Security Office's discretion in denying or approving a request for any reason, including the content or viewpoint of the speaker or group's intended message.

74.     Thus, the Policy fails to provide "narrow, objective and definite standards," which are necessary components of a constitutional of a permit requirement. *See Shuttlesworth v. Birmingham*, 394 U.S. 147, 150 (1988).

75.     Additionally, this requirement of prior approval is not a reasonable time, place or manner restriction in that it is imposed in all cases without limitation to circumstances in which prior approval or reservation is required. It applies to any person or group, no matter how small, and without regard to whether the contemplated speech activity might interfere with other uses of the space or require the exclusion of other speakers.

76.     Courts in Wisconsin have struck down similar permitting schemes requiring advance registration and approval of expressive conduct by small groups as overbroad and not narrowly tailored to serve a significant governmental interest. (*See Kissick v. Huebsch*, 956 F. Supp. 2d 981 (W.D. Wis. 2013) (enjoining permit requirement in the Wisconsin State Capitol for

events or demonstrations, even those involving only one person, because the permitting scheme was "not narrowly tailored to serve a significant governmental interest", and barring enforcement of the policy for events of 20 persons or less).

77.     NWTC's Policy suffers from the identical defect. The Policy restricts expressive conduct, even by a single individual, quarantining it to a meager speech zone that requires advance reservation.

78.     By requiring individuals and groups to provide their name and contact information, the NWTC Policy prohibits individuals and groups from engaging in anonymous speech.

79.     The freedom to publish and speak anonymously is an aspect of the freedom of speech which receives broad protection by the First Amendment. *McIntyre v. Ohio Elections Com'n*, 514 U.S. 334 (1995); *Talley v. California*, 362 U.S. 60 (1960).

80.     The Policy also unconstitutionally prohibits students from engaging in spontaneous expression due to the requirement that they must seek permission before speaking.

81.     The Public Assembly Area is not open to spontaneous or anonymous speech because individuals and groups must fill out an application to use the space and identify themselves and their organizations prior to accessing the Public Assembly Area.

82.     By requiring a permit application prior to accessing the Public Assembly Area in all cases, prohibiting anonymous speech, and failing to provide guidelines for approval of requests, NWTC's Public Assembly Policy abridges the First Amendment rights of Plaintiff and other NWTC students, and imposes a prior restraint on the freedom of speech of the Plaintiff and all NWTC students in violation of the First and Fourteenth Amendments to the United States Constitution.

83.     Plaintiff has a reasonable fear of prosecution and discipline based on her desire to continue passing out Valentines outside the Public Assembly Area without submitting the required "Request to Reserve" and NWTC's past enforcement of the Policy against her.

84.     By applying this Policy to Plaintiff's conduct on February 14, 2018, NWTC violated her rights to freedom of speech and expression under the First Amendment, as applied to the States through the Fourteenth Amendment.

85.     In doing so, each of the Defendants acted under color of state law and in violation of clearly established constitutional rights of which any reasonable college officer should have been aware.

### Third Claim of Relief – Violation of First and Fourteenth Amendment
### (Facial Challenge - Solicitation, Mass Distribution, Disruption)

86.     Plaintiff incorporates by reference all previous paragraphs as if fully restated here.

87.     NWTC's Public Assembly Policy provides that "Soliciting petitions or other attempts . . . to convey a message to a broad audience of people on college grounds outside of the public assembly area, will not be permitted."

88.     The Policy mandates that "picketing or displaying of signs" and "mass distribution of literature" occur only in the prescribed Public Assembly Area and with the appropriate "*request to reserve*".

89.     The Policy provides that, "Any acts that are disruptive to the normal operations of the College including but not limited to classes and College business or violates the rights of others will not be tolerated."

90.     The Policy does not define "soliciting," "solicitation," "mass distribution," "literature," "picketing," "displaying," "disruptive," or "limited public forum."

91.     NWTC's Policy with respect to soliciting is vague and overbroad and serves to

chill and restrict a wide variety of expressive conduct that would not be considered the type of "solicitation" that might be constitutionally restricted.

92. NWTC's policy with respect to "mass distribution" of literature is vague and overbroad and restricts a wide variety of expressive conduct that would not constitute the type of distribution of literature that might be constitutionally restricted.

93. NWTC's prohibition of speech that is "disruptive" is unconstitutionally vague and overbroad and restricts a wide variety of speech that cannot be constitutionally limited.

94. As such, NWTC's Public Assembly Policy unconstitutionally abridges the constitutional rights of Plaintiff and other NWTC students under the First and Fourteenth Amendments.

95. Plaintiff has a reasonable fear of prosecution and discipline based on her desire to continue passing out Valentines outside the Public Assembly Area without submitting the required "Request to Reserve" and NWTC's past enforcement of the Policy against her.

96. By applying this Policy to Plaintiff's conduct on February 14, 2018, NWTC violated her rights to freedom of speech and expression under the First Amendment, as applied to the States through the Fourteenth Amendment.

97. In so doing, each defendant acted under color of state law and in violation of clearly established constitutional rights of which any reasonable college officer should have been aware.

**Fourth Claim of Relief – Violation of First and Fourteenth Amendment**
**(As Applied Challenge - Overbreadth and Vagueness)**

98. Plaintiff incorporates by reference all previous paragraphs as if fully restated here.

99.     Even if NWTC's Public Assembly Policy is not facially unconstitutional, NWTC's application of the Policy is unconstitutional as applied to the Plaintiff's specific conduct.

100.    Upon arriving at the General Studies Office, Security Officer Hagel informed Ms. Olsen that she was "soliciting" in violation of the Public Assembly Policy and that she was not allowed to hand out the Valentines.

101.    The NWTC security report states that Plaintiff was disrupting the learning environment and in an area without permission and uninvited where students were not permitted to enter freely. (Ex. B.)

102.    None of these assertions are true.

103.    Plaintiff did not "solicit" any action on the part of any student or person. She simply handed Valentines to approximately ten persons. She did not force them on any person who did not wish to take one or entreat anyone who declined to take one to accept it. Her conduct did not constitute the type of "solicitation" or other conduct that can be constitutionally restricted.

104.    The Valentines contained no messages (such as obscene or defamatory statements or "fighting words") that would lawfully permit their restriction under the First Amendment.

105.    In no way did Ms. Olsen's passing out of Valentines disrupt the learning environment. She handed out Valentines in several different areas of the Student Center but did not hand out Valentines in any class, or in the library or anywhere that students were participating in the learning environment.

106.    In particular, the General Studies Office area is not a learning environment. In fact, at the time Ms. Olsen entered that area on February 14, 2018, others were socializing in the

area and discussing matters unrelated to school business. Therefore, Ms. Olsen's handing out of Valentines in that area cannot be said to have disrupted the learning environment.

107. The General Studies Office area contained no signage or other indication of restricted access, and Ms. Olsen had freely walked into and through the same area on numerous previous occasions without incident and without anyone telling her she was unwelcome or otherwise in a prohibited or restricted area. She has seen numerous other students do the same thing. Ms. Olsen regularly enters this area on school business, as well as for personal reasons, and is acquainted with the office staff and leadership.

108. Nor did Plaintiff engage in the "mass distribution" of literature in a way that can be constitutionally restricted.

109. Plaintiff's conduct in passing out roughly a dozen heart-shaped Valentines, approximately three inches by three inches in size or smaller, on Valentine's Day does not constitute "mass distribution of literature" in a way that can be constitutionally restricted.

110. Prohibiting Plaintiff from handing out Valentines of roughly three inches by three inches in size to a dozen friends and acquaintances on Valentine's Day because she did not submit the required "Request to Reserve" and limit her actions to the prescribed Public Assembly Area unconstitutionally restricted her rights of freedom of speech and expression.

111. NWTC's action in enforcing its overbroad and vague Public Assembly Policy against Ms. Olsen on February 14, 2018, and preventing her from handing out religiously-themed Valentines on Valentine's Day outside of the prescribed "Free Speech Area" violated Plaintiff's right to freedom of speech under the First and Fourteenth Amendments.

112. In so doing, each of the Defendants acted under color of state law and in violation of clearly established constitutional rights of which any reasonable college officer should have

been aware.

**Fifth Claim of Relief – Violation of First and Fourteenth Amendment**
**(Content-based Discrimination)**

113.     Plaintiff incorporates by reference all previous paragraphs as if fully restated here.

114.     The United States Supreme Court has held that States and state entities may not allow access to state property and facilities for the purposes of speech and expression and then restrict what speech or expression they permit based on its content. *Good News Club v. Milford Central School*, 533 U.S. 98 (2001). Similarly, public institutions may not prescribe policies related to speech and expression and then apply those policies differently based on the content of the speech or expression. *Rosenberger v. Rector and Visitors of University of Virginia*, 515 U.S. 819 (1995).

115.     The Valentine's Day cards Ms. Olsen handed out on February 14, 2018, were heart-shaped, on red paper, religiously-themed, and said things like; "You are special! 1 John 4:11," God is love 1 John 4:11," Jesus loves you! Romans 5:8," and "You are loved and cared for! 1 Peter 5:7."

116.     The Security Report completed by NWTC Security states that an unidentified person called Campus Security complaining about a female student "passing out Valentine's Day cards with bible references on the cards". The Report also notes that security personnel told Ms. Olsen "some people may . . . find the message written on the card offensive."

117.     After receiving the call, NWTC Security Supervisor Jandrin sent Security Officer Hagel to locate Ms. Olsen and bring her to the Security Office.

118.     Jandrin and Hagel's actions in suppressing Ms. Olsen's freedom of speech and expression in handing out religiously-themed Valentine's Day cards were based, in part, on the religious content of the cards.

119.    Notwithstanding any purported violation of the Policy, Jandrin and Hagel discriminated against Ms. Olsen based upon the content of her speech and thus violated her freedom of speech under the First and Fourteenth Amendments to the United States Constitution.

120.    In so doing, each Defendant acted under color of state law and in violation of clearly established constitutional rights of which any reasonable college officer should have been aware.

WHEREFORE, Ms. Olsen respectfully requests that the Court enter judgment:

A.    Declaring that the NWTC Public Assembly Policy's limitation of speech to the prescribed Public Assembly Area, on its face, is an unconstitutional violation of freedom of speech and expression.

B.    Declaring that the NWTC Public Assembly Policy's requirement for prior approval and overboard and vague standards for obtaining approval, on its face, is an unconstitutional violation of freedom of speech and expression.

C.    Declaring that the NWTC Public Assembly Policy's restriction on solicitation, mass distribution of literature, and disruptive speech, on its face, is an unconstitutional violation of freedom of speech and expression and unconstitutionally vague.

D.    Declaring that the NWTC Public Assembly Policy, as applied to Plaintiff's actions on February 14, 2018, is an unconstitutionally overbroad and vague violation of freedom of speech and expression.

E.    Finding that NWTC deprived Ms. Olsen of her First Amendment right of freedom of speech and expression, in violation of 42 U.S.C. § 1983.

F.    Finding that Defendants Jardin and Hagel discriminated against Plaintiff by restricting her First Amendment right of freedom of speech and expression based on the content

of that speech and expression, in violation of 42 U.S.C. § 1983.

      G.    Permanently enjoining NWTC from further application of its Public Assembly Policy to students or visitors to NWTC.

      H.    Awarding Plaintiff nominal damages.

      I.    Awarding Plaintiff costs and fees, including attorneys' fees under 42 U.S.C. § 1988.

      J.    Awarding Plaintiff such other relief as this Court finds just and equitable.

Respectfully submitted,
WISCONSIN INSTITUTE FOR LAW & LIBERTY,
Attorneys for Plaintiff

Dated: September 4, 2018      /S/ RICHARD M. ESENBERG
Richard M. Esenberg, WI Bar No. 1005622
414-727-6367; rick@will-law.org
Thomas C. Kamenick, WI Bar No. 1063682
414-727-6368; tom@will-law.org
Clyde A. Taylor, WI Bar No. 1103207
clyde@will-law.org
MAILING ADDRESS:
1139 East Knapp Street
Milwaukee, WI 53202-2828
414-727-9455
FAX: 414-727-6385