UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

POLLY OLSEN,

        Plaintiff,

    v.

NORTHEAST WISCONSIN TECHNICAL COLLEGE
DISTRICT BOARD,

H. JEFFREY RAFN and COLLEEN SIMPSON,
in their official capacities as officers and employees of
Northeast Wisconsin Technical College,

RANDY SCHULTZ, MIKE JANDRIN and JESSE
HAGEL,
in their personal capacities and official capacities as
officers and employees of Northeast Wisconsin
Technical College,

and

CARLA HEDTKE, KIM SCHANOCK,
GERALD WORRICK, CATHY DWORAK,
DAVID MAYER, JEFF RICKABY,
DOROTHY SADOWSKI,
RICHARD STADELMAN and BEN VILLARUEL,
in their official capacities as Members of the District
Board of Northeast Wisconsin Technical College,

        Defendants.

Case No.  18-cv-01366-WCG

Honorable William C. Griesbach

**ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANTS**

NOW COME the defendants (collectively, "Defendants"), by their undersigned counsel, Davis & Kuelthau, s.c., and as and for their Answer and Affirmative Defenses to the plaintiff's Complaint, admit, deny and allege as follows:

## ANSWER

### Answer to Introduction

1.      This is a civil rights action under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution, brought to remedy a violation of the constitutional rights of the Plaintiff, Polly Olsen.  The Defendants have maintained and enforced a set of policies that unconstitutionally restrict the First Amendment rights of the Plaintiff and other students at Northeast Wisconsin Technical College by, among other things, restricting expressive activities to a tiny portion of campus, requiring prior approval even within that tiny area, and arrogating to administrators unfettered discretion as to whether to confer that approval, and enacting broad and vague restrictions on speech throughout campus.  The Defendants unconstitutionally applied these policies to Plaintiff's expressive activities and, unless this Court intervenes, will continue to do so.  Moreover, the Defendants applied these unconstitutional restrictions based on the viewpoint expressed by the Plaintiff.  This action seeks declaratory and injunctive relief, damages and attorneys' fees.

**ANSWER:    Defendants admit that the Complaint purports to assert a civil rights action under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution.  Defendants further admit that, based on the face of the Complaint, that the plaintiff is seeking declaratory and injunctive relief, damages and attorneys' fees. Defendants deny all other allegations set forth in, or implied by, paragraph 1.**

2

<u>Answer to Jurisdiction and Venue</u>

2.      The cause of action in this case arises under the Constitution and laws of the United States, and subject matter jurisdiction is therefore proper under 28 U.S.C. §§ 1331 and 1343.  This Court has authority to grant the requested declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57.  It has authority to issue injunctive relief pursuant to 42 U.S.C. § 1983 and Fed. R. Civ. P[.] 65.  It has authority to award attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**ANSWER:   The allegations in paragraph 2 constitute legal conclusions to which no answer is required.  To the extent such allegations are deemed factual, Defendants admit.**

3.      All events or omissions giving rise to this cause of action occurred in the City of Green Bay, Wisconsin, which is within the Eastern District of Wisconsin.  Venue is therefore proper under 18 (sic) U.S.C. § 1391(b)(2).

**ANSWER:   The allegation that venue is proper under 18 (sic) U.S.C. § 1391(b)(2) is a legal conclusion to which no response is required.  To the extent that allegation is deemed factual, and as for all other allegations set forth in paragraph 3, Defendants admit that all alleged events or omissions purported to give rise to the plaintiff's cause of action occurred in the City of Green Bay, Wisconsin, which is within the Eastern District of Wisconsin and, therefore, venue is proper pursuant to 28 U.S.C. § 1391(b)(2).**

<u>Answer to Factual Background</u>

<u>*Answer to The Parties*</u>

4.      The Plaintiff, Polly Olsen, is an adult citizen and resident of the United States and the State of Wisconsin.  She resides at 2012 Vine St. Apt C, Green Bay, WI,(sic) 54302.  Ms.

3

Olsen is a student at Northeast Wisconsin Technical College (NWTC). She was enrolled in classes during the Spring Semester of 2018 and will continue her studies in the Fall Semester of 2018. Ms. Olsen attends classes at the college's Green Bay campus.

**ANSWER:** **Defendants admit that the plaintiff, Polly Olsen, is a student at Northeast Wisconsin Technical College ("NWTC"), that she was enrolled in classes during the 2018 spring semester, and that she attends classes at NWTC's Green Bay campus. Defendants affirmatively state that Ms. Olsen is enrolled and participating in classes during the 2018 fall semester. Defendants are without knowledge or information sufficient to form a belief as to the remaining allegations set forth in paragraph 4 and therefore deny same.**

5. Defendant Northeast Wisconsin Technical College District Board is in charge of the technical colleges in the District (Wis. Stat. § 38.01) and may sue and be sued in the name of the district (Wis. Stat. § 38.14).

**ANSWER:** **The allegations in paragraph 5 of the Complaint constitute legal conclusions for which no response is required. To the extent such allegations are deemed factual, Defendants admit.**

6. Northeast Wisconsin Technical College District is one of sixteen districts that operate a statewide plan for vocational, technical, and adult education, and serves all or parts of nine counties in Northeast Wisconsin. It is governed by its District Board which has exclusive control over the policy-making operations that govern the District.

**ANSWER:** **Defendants admit.**

7. Defendants H. Jeffrey Rafn and Colleen Simpson are, respectively, President and Vice President of Student Services of NWTC. They are sued in their official capacities.

4

**ANSWER:** Defendants admit that the Complaint purports to sue Defendants H. Jeffrey Rafn ("Rafn") and Colleen Simpson ("Simpson") in their official capacities with NWTC. Defendants admit all other allegations set forth in paragraph 7.

8. Defendant Randy Schultz is Security Coordinator, Defendant Mike Jandrin is Security Supervisor, and Defendant Jesse Hagel is a Security Officer at NWTC. They are sued in their personal and official capacities.

**ANSWER:** Defendants deny that Defendant Jesse Hagel ("Hagel") is a security officer at NWTC. Defendants admit that the Complaint purports to sue Defendant Randy Schultz ("Schultz"), Defendant Mike Jandrin ("Jandrin") and Hagel in their official capacities with NWTC and in their personal capacities but deny any basis exists upon which Hagel, Schultz or Jandrin may be liable to the plaintiff in their personal capacities. Defendants admit all other allegations set forth in paragraph 8.

9. Defendants Carla Hedtke, Kim Schanock, Gerald Worrick, Cathy Dworak, David Mayer, Jeff Rickaby, Dorothy Sadowski, Richard Stadelman, and Ben Villarruel are members of the District Board of Northeast Wisconsin Technical College. Each of them is sued in their official capacity as Board members.

**ANSWER:** Defendants admit that the Complaint purports to sue Defendant Carla Hedtke ("Hedtke"), Defendant Kim Schanock ("Schanock"), Defendant Gerald Worrick ("Worrick"), Defendant Cathy Dworak ("Dworak"), Defendant David Mayer ("Mayer"), Defendant Jeff Rickaby ("Rickaby"), Defendant Dorothy Sadowski ("Sadowski"), Defendant Richard Stadelman ("Stadelman"), and Defendant Ben Villarruel ("Villarruel") in their official capacities as members of the NWTC District Board of Trustees. Defendants admit all other allegations set forth in paragraph 9.

5

10. At all times pertinent and with respect to all matters alleged herein, each of the Defendants acted under color of state law.

**ANSWER**: **The allegations set forth in paragraph constitute legal conclusions to which no response is required. To the extent such allegations are deemed factual, Defendants deny.**

11. Unless otherwise indicated or clear from the context, all of the Defendants shall be referred to collectively hereinafter as "NWTC."

**ANSWER**: **The contents of paragraph 11 do not constitute an allegation for which a response is required. Defendants admit that, within the Complaint, all of Defendants are frequently referred to collectively as "NWTC."**

*Answer to The Events of February 14, 2018*

12. Based on her religious beliefs and in honor of her mother's custom, Ms. Olsen has on several occasions passed out religiously-themed Valentine's Day cards on Valentine's Day around the NWTC campus.

**ANSWER**: **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 12 and therefore deny same.**

13. On February 14, 2018, Valentine's Day, Ms. Olsen walked through freely accessible areas on NWTC's Green Bay campus – areas that are open to students – and handed out religiously-themed Valentine's Day cards to friends and NWTC staff.

**ANSWER**: **Defendants admit that February 14, 2018, was Valentine's Day and that on February 14, 2018, the plaintiff handed out/attempted to hand out religiously-themed Valentine's Day cards. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation that the plaintiff handed out**

6

Valentine's Day cards to friends and NWTC staff and therefore deny same. Defendants deny all remaining allegations set forth in paragraph 13.

14. The Valentines that Ms. Olsen handed out were heart-shaped and contained messages like;(sic) "You are special! 1 John 4:11," ["]God is love 1 John 4:11," "Jesus loves you! Romans 5:8," and "You are loved and cared for! 1 Peter 5:7." True and correct copies of some of those Valentines are attached hereto as Exhibit A.

**ANSWER:** **Defendants admit that the document attached to the Complaint as Exhibit A appears to be a copy of handmade Valentine's Day-themed notes. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 14 and therefore deny same.**

15. The Valentines were approximately three inches by three inches in size, or smaller.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 15 and therefore deny same.**

16. Ms. Olsen was not selling the Valentines, soliciting donations, or asking the recipients for anything. Everyone was free to decline them.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 16 and therefore deny same.**

17. An unidentified person telephoned the NWTC Office of Safety & Security and, per the NWTC Security Office report, complained that a female student (Ms. Olsen) was handing out Valentine's Day cards with Bible references on the cards in the area of the General Studies Office. The Security Office report characterized that complaint as one involving "suspicious

7

activity and/or person." A true and correct copy of the security report is attached hereto as Exhibit B.

**ANSWER:** **Defendants admit and affirmatively state that "suspicious activity" is a general descriptive category of incident types to select from the NWTC security report program.**

18. At this point, Supervisor Mike Jandrin "immediately accessed the security camera for this area to see if this student was captured on video." He also dispatched Security Officer Jesse Hagel to the General Studies Office Area to locate the student and bring her to the Security Office, indicating that according to the telephone complaint, the suspicious student was "wearing a red dress."

**ANSWER:** **Defendants admit.**

19. There is nothing under Wisconsin law or the rules of NWTC which would make "handing out Valentine's Day cards with bible references" illegal or constitute "suspicious activity" or make the female student handing out such Valentine's on Valentine's Day a "suspicious person."

**ANSWER:** **The allegations set forth in paragraph 19 are legal conclusions to which no response is required. To the extent such allegations are deemed factual, Defendants deny.**

20. As directed by his supervisor, Officer Hagel located Ms. Olsen, told her that her actions constituted "soliciting" and were a violation of NWTC's Public Assembly Policy (the "Policy") (a true and correct copy of the Policy is attached hereto as Exhibit C) and escorted her to the NWTC Security Office.

**ANSWER:** Defendants admit that the document attached to the Complaint as Exhibit C is a true and correct copy of the Northeast Wisconsin Technical College Public Assembly Policy (the "Policy"), that, upon direction, Hagel located Olsen and that he escorted her to the NWTC Security Office. Defendants are without knowledge or information sufficient at this time to form a belief as to the truth of the remaining allegations set forth in paragraph 20 and therefore deny same.

21.     Upon arrival at the Security Office, Supervisor Jandrin told Ms. Olsen that some people might consider her actions to be soliciting or find the Bible references on her cards to be offensive.

**ANSWER:**     Defendants admit.

22.     Supervisor Jandrin and Security Coordinator Randy Schultz further told Ms. Olsen that the reason she had been brought to the Security office for a conversation was for "(possibly) disturbing the learning environment and walking into an area that is restricted to students without being invited or announced."

**ANSWER:**     Defendants admit.

23.     Ms. Olsen had not handed out Valentines during any class, in the library, or in any area where students were in a learning environment.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 23 and therefore deny same.

24.     Any claim that Ms. Olsen disturbed or disrupted the learning environment by handing out religiously-themed Valentines is false.

**ANSWER:**     Defendants deny.

25.     Ms. Olsen did not walk into any area to which access by students was restricted.

9

**ANSWER:** Defendants deny.

26. To the contrary, she walked through a number of areas in the NWTC Student Center handing out Valentines. The NWTC Student Center, as its name indicates, is a part of the NWTC campus that serves a number of needs for its students. It has student common areas, lounge areas, a cafeteria, a coffee shop, and certain offices providing student services, including offices known as the General Studies Office.

**ANSWER: Defendants admit that the NWTC Student Center is a part of the NWTC Campus and that within the Student Center are lounge areas, a cafeteria, a coffee shop, various offices, including the General Studies Office, and other areas. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation that "[t]o the contrary, she walked through a number of areas in the NWTC Student Center handing out Valentines" and therefore deny same. Defendants deny all remaining allegations set forth in paragraph 26.**

27. Ms. Olsen handed out Valentines in various areas of the NWTC Student Center. On information and belief, when Supervisor Jandrin and Security Coordinator Schultz told her that she had entered an area in which access by students is restricted without being invited or announced, they were referring to the General Studies Office in the Student Center.

**ANSWER: Defendants deny that when Jandrin and Schultz told the plaintiff that she had entered an area in which access by students is restricted without being invited or announced, they were referring to the General Studies Office and affirmatively assert that they were referring to private work areas within the General Studies Office beyond the front-end reception area. Defendants are without knowledge or information sufficient to**

form a belief as to the truth of the remainng allegations set forth in paragraph 27 and therefore deny same.

28.     Prior to Valentine's Day in 2018, Ms. Olsen had been in the General Studies Offices many times because she knew some of the people that worked there, including Cassie Reed.

**ANSWER:     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 28 and therefore deny same.**

29.     Ms. Olsen was never told that any part of the General Studies Office was restricted or that she could only enter that area after being invited or announced.

**ANSWER:     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 29 and therefore deny same.**

30.     Ms. Olsen had freely entered the General Studies Offices in the past, both on school business and for personal reasons, without questions or comment from office staff and has seen many other students do the same.

**ANSWER:     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 30 and therefore deny same.**

31.     Ms. Olsen has the right to hand out Valentine's Day cards with Bible references in any area of the NWTC campus where she has the right to be present.  Such conduct is expressive conduct protected by the First Amendment.

**ANSWER:     The allegations set forth in paragraph 31 constitute legal conclusions to which no response is required.  To the extent such allegations are deemed factual, Defendants deny.**

32.     Ms. Olsen was told by NWTC that her activities on Valentine's Day of 2018 in handing out religiously-themed Valentine's Day cards were improper soliciting and a violation of the Policy.  As explained in more detail below, the Policy limits speech activities to a small portion of the campus.  Moreover, even within the tiny area within which speech is permitted, students must apply for and obtain prior approval.

**ANSWER:     Defendants deny.**

33.     Ms. Olsen desires to pass out Valentine's Day cards and other similar cards and information in areas outside NWTC's prescribed Public Assembly Area, including areas where NWTC has by policy and practice allowed and encouraged freedom of expression by a variety of other individuals and groups, without having to first request permission from the College.  Ms. Olsen is prohibited doing so under the Policy.

**ANSWER:     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation of what the plaintiff desires to do.  Defendants deny any and all remaining allegations set forth in, or implied by, paragraph 33.**

34.     Ms. Olsen would also like to spontaneously speak on issues occurring in the news or that are otherwise important to her, by herself or in conjunction with others, in areas outside NWTC's prescribed Public Assembly Area, including areas where NWTC has by policy and practice allowed and encouraged freedom of expression by a variety of other individuals and groups, without having to first request permission from NWTC.  Ms. Olsen is prohibited from doing so under the Policy.

**ANSWER:     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation of what the plaintiff desires to do.  Defendants deny any and all remaining allegations set forth in, or implied by, paragraph 34.**

*Answer to NWTC's Public Assembly Policy*

35.     NWTC has promulgated a Policy that regulates freedom of speech and expression on campus and applies equally to NWTC students and uninvited persons and organizations. The Policy requires each Campus and regional learning center to "designate space assigned as a limited public forum referred to as the Public Assembly Area." (Ex. C.)

**ANSWER:     Defendants deny that NWTC has promulgated a policy that regulates freedom of speech and expression on campus. Defendants admit that the Policy applies to uninvited persons and organizations wishing to use an area for public assembly on campus and that each NWTC campus and regional learning center will "designate space assigned as a limited public forum referred to as the Public Assembly Area."**

36.     The Public Assembly Area on the Green Bay campus is a small area located outside NWTC's main entrance and constitutes a small fraction (less than 0.5%) of the NWTC Green Bay campus area. (*See* Exhibit D attached hereto (circle by the Main Entrance and Student Center)). Upon information and belief, designation of the Public Assembly Area was done by Defendant Rafn and approved or acquiesced in by the District Board Defendants.

**ANSWER:     Defendants admit.**

37.     The Policy mandates that "picketing or displaying of signs" and "mass distribution of literature" may occur only in the prescribed Public Assembly Area and with the appropriate "*request to reserve*." The Policy allows literature, petitions, and request for registrations to be distributed only in the Public Assembly Area and only pursuant to an approved "request to reserve," except when specifically approved otherwise by NWTC's President or his/her designee.

**ANSWER:     Defendants deny.**

38.     The Policy provides that "Soliciting petitions or other attempts … to convey a message to a broad audience of people on college grounds outside of the public assembly area, will not be permitted."

**ANSWER:     Defendants deny and affirmatively assert that the Policy provides, with emphasis added, "Soliciting petitions or other attempts <u>such as through excessive noise to protest, demonstrate or engage in other types of activities with the intent to</u> convey a message to a broad audience of people on College grounds outside of the public assembly area, will not be permitted."**

39.     The Policy provides that, "Any acts that are disruptive to the normal operations of the College including but not limited to classes and College business or violates the rights of others will not be tolerated."

**ANSWER:     Defendants admit that paragraph 39 accurately quotes a portion of the Policy.**

40.     The Policy does not define "soliciting," "solicitation," "mass distribution," "literature," "picketing," "displaying," "disruptive," or "limited public forum."

**ANSWER:     Defendants admit.**

41.     Through its Policy, NWTC has effectively deemed all remaining indoor and outdoor areas of campus, outside the prescribed Public Assembly Area, as non-public forums off-limits for student speech and expression.

**ANSWER:     Defendants deny.**

42.     Even within the tiny Public Assembly Area, NWTC restricts speech by requiring prior approval pursuant to a "request to reserve," which must be submitted in all cases without regard to the number of persons wishing to speak or assembly or whether the contemplated

speech activities would preclude other speakers, interfere with use of the area by others, or otherwise present any need for prior approval.

**ANSWER:** **Defendants deny.**

43. The Policy does not provide any criteria by which the college shall review applications or grant permission to use the Public Assembly Area, other than to indicate that, "In most cases, use of space will be assigned to the person or organization that requests the area first."

**ANSWER:** **Defendants deny.**

44. Despite this assertion, the Public Assembly Request form requires information regarding both the identity of the speaker and the content of the intended speech and provides no criteria governing how requests will be considered and approved or denied. A true and accurate copy of the Public Assembly Request for is attached hereto as Exhibit E.

**ANSWER:** **Defendants admit that a true and correct copy of the NWTC Public Assembly Request form is attached to the Complaint. Defendants deny all remaining allegations set forth in, or implied by, paragraph 44.**

Answer to First Claim of Relief – Violation of First and Fourteenth Amendment
(Facial Challenge – Limitation of Speech to the Public Assembly Area)

45. Plaintiff incorporates by reference all previous paragraphs as if fully restated here.

**ANSWER:** **Defendants reiterate and reassert all previous paragraphs of their Answer as though set forth fully herein.**

46. The First Amendment to the United States Constitution provides, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

**ANSWER:** **Defendants admit.**

47.     The First Amendment's guarantee of freedom of speech is made applicable to the States through the Fourteenth Amendment. *Gitlow v. New York*, 268 U.S. 652 (1925).

**ANSWER:** **The allegations set forth in paragraph 47 constitute legal conclusions to which no response is required.  To the extent such allegations are deemed factual, Defendants admit the First Amendment's guarantee of freedom of speech is applicable to the States.**

48.     Under U.S.C. § 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  At all times and with respect to all matters alleged herein, each of the defendants was acting under color of state law.

**ANSWER:** **The allegations set forth in paragraph 48 constitute legal conclusions to which no response is required.  To the extent such allegations are deemed factual, Defendants admit that paragraph 48 accurately quotes 42 U.S.C. § 1983.  Defendants deny any and all remaining allegations set forth in, or implied by, paragraph 48.**

49.     The First Amendment is fully binding on public institutions like NWTC. *Widmar v. Vincent*, 454 U.S. 263, 268-69 ("[O]ur cases leave no doubt that the First Amendment rights of speech and association extend to the campuses of state universities.")  As the United States Supreme Court has stated, "The college classroom with its surrounding environs is peculiarly the 'marketplace of ideas.'"  *Healy v. James*, 408 U.S. 169, 180 (1972).  Likewise, the Supreme

Court has made clear that "[n]either students [n]or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indp. Cmty Sch. Dist.*, 393 U.S. 503, 506 (1969).

**ANSWER:** **The allegations set forth in paragraph 49 constitute legal conclusions to which no response is required. To the extent such allegations are deemed factual, Defendants affirmatively state that the cases cited by the plaintiff speak for themselves and deny, under any interpretation of such cases, that Defendants violated any constitutional or statutory rights of the plaintiff.**

50. In assessing restrictions of speech on college campuses, courts often employ "forum analysis." If an area within which speech is protected is either at traditional or designated public forum, restrictions on speech are subject to strict scrutiny. *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 469-70 (2009). The Supreme Court has noted that "a university campus, at least as to its students, possesses many of the characteristics of a traditional public forum." *Cornelius*, 473 U.S. at 803.

**ANSWER:** **The allegations set forth in paragraph 50 constitute legal conclusions to which no response is required. To the extent such allegations are deemed factual, Defendants affirmatively state that the cases cited by the plaintiff speak for themselves and deny, under any interpretation of such cases, that Defendants violated any constitutional or statutory rights of the plaintiff.**

51. Reasonable time, place, and manner restrictions must be "justified without reference to the content of the regulated speech" and "narrowly tailored to serve a significant governmental interest," and must "leave open ample alternative channels for communication of the information." *Clark v. Cmty for Creative Non-Violence*, 468 U.S. 288, 293 (1984).

17

**ANSWER:**   The allegations set forth in paragraph 51 constitute legal conclusions to which no response is required.   To the extent such allegations are deemed factual, Defendants affirmatively state that the cases cited by the plaintiff speak for themselves and deny, under any interpretation of such cases, that Defendants violated any constitutional or statutory rights of the plaintiff.

52.     As a public college, NWTC's campus is government property.   NWTC cannot legally declare the vast majority of campus to be a "non-public forum."   "Government property … does not automatically cease to be a designated public forum because the government restricts some speech on the property."   *Hays County Guardian v. Supple*, 969 F.2d 111, 117 (5th Cir. 1992).   The government cannot declare one area of its property a public or limited public forum and then deny access to the rest.   *See University of Cincinnati Young Americans for Liberty v. Williams*, WL 2160969 (sic) (S.D. Ohio 2012) (striking down the university's policy which required prior notice for "demonstrations, picketing, and rallies" and restricted them to a limited area on campus); *Khademi v. South Orange County Community College Dist.*, 194 F.Supp.2d 1011 (C.D. Cal 2002) (striking down policy declaring vast areas of campus off-limits for leafletting).

**ANSWER:**   The allegations set forth in paragraph 52 constitute legal conclusions to which no response is required.   To the extent such allegations are deemed factual, Defendants admit that NWTC's campus is government-owned property and affirmatively state that the cases cited by the plaintiff speak for themselves and deny, under any interpretation of such cases, that Defendants violated any constitutional or statutory rights of the plaintiff.

18

53.     Therefore, the public areas of public universities are generally regarded as traditional public forums – at least as to students.

**ANSWER:    The allegations set forth in paragraph 53 constitute legal conclusions to which no response is required.  To the extent such allegations are deemed factual, Defendants lack knowledge or information sufficient to form a belief as to the manner in which students, generally or specifically at NWTC, view public areas and, therefore, deny same; Defendant's deny that the plaintiff's conduct was confined to the public areas of NWTC; Defendants deny all remaining allegations set forth in, or implied by, paragraph 53.**

54.     "In addition to traditional public for a, a public forum may be created by government designation of a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects." *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 802 (1985). Such actions by the government "may … transform a publicly-owned property into a public forum." *Miller v. City of Cincinnati*, 622 F.3d 524, 534 (6th Cir. 2010).

**ANSWER:    The allegations set forth in paragraph 54 constitute legal conclusions to which no response is required.  To the extent such allegations are deemed factual, Defendants affirmatively state that the cases cited by the plaintiff speak for themselves and deny, under any interpretation of such cases, that Defendants violated any constitutional or statutory rights of the plaintiff.**

55.     The NWTC campus has many open areas and sidewalks, as well [as] areas inside NWTC buildings, where student speech, expressive activity, and distribution of literature would not (and does not) interfere with or disturb access to college buildings or sidewalks, impede

vehicular or pedestrian traffic, or in any way substantially disrupt the operations of the campus or the college's educational functions.

**ANSWER:** **The allegations set forth in paragraph 55 constitute legal conclusions to which no response is required. To the extent such allegations are deemed factual, Defendants admit that the NWTC campus has open areas, sidewalks and interior areas. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in, or implied by, paragraph 55 and therefore deny same.**

56. For example, the NWTC campus contains an outdoor courtyard where students frequently assemble to eat meals and converse (*See* Exhibit F attached hereto (area circled in red)). On information and belief, this outdoor area is also used for school and club events which involve large assemblies of students and staff, speakers, and distribution of literature.

**ANSWER:** **Defendants admit that the NWTC Green Bay campus includes an outdoor area, which is circled in red on Dkt. No. 1-6 filed in this matter, where students frequently gather. Defendants further admit that this outdoor area is used for school and club events. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in, or implied by, paragraph 56 and therefore deny same.**

57. The NWTC campus also contains an area known as the "back patio" located outdoors and between NWTC buildings. On Wednesday, May 16, 2018, the NWTC Global Connections Club held a "Holi Festival" at this location. This event involved significant expressive activity by students including face-painting, water guns, and dancing as well as service of snacks and beverages.

**ANSWER:** Defendants admit that the NWTC Green Bay campus includes an outdoor area commonly referred to, on information and belief, the "back patio" and that the NWTC Global Connections student organization held an event on Wednesday, May 16, 2018, at this location that the student organization referred to as a "Holi Festival." Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in, or implied by, paragraph 57 and therefore deny same.

58. The NWTC campus also has an area known as the "Commons." Every semester NWTC has an "involvement fair" held in the Commons located inside the NWTC Student Center – the same building in which Ms. Olsen was handing out Valentines. During this fair, up to fifty student clubs set up tables to talk to students and distribute literature regarding their clubs.

**ANSWER:** Defendants admit that the NWTC Green Bay campus includes an area known as the Commons, which is where the plaintiff was distributing Valentines on February 14, 2018, and that NWTC hosts an event in the Commons for student clubs and organizations to attend. Defendants affirmatively assert that such student clubs and organizations use the Commons during that event with NWTC's permission. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in, or implied by, paragraph 58 and therefore deny same.

59. NWTC also hosts regular career fairs which are held in the Commons and in the gym and at which numerous employers set up displays, meet with students, and hand out information regarding the businesses they represent.

**ANSWER:** Defendants admit that NWTC sponsors career fairs held at the Green Bay campus during which employers and students hold discussions and exchange

information.  Defendants affirmatively assert that such fairs are sponsored by NWTC and businesses attend only on NWTC's invitation.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in, or implied by, paragraph 59 and therefore deny same.

60.    All of the areas described above are, by nature of the areas in question, compatible with expressive activity and should be characterized as traditional public forums, particularly with respect to NWTC students.  For example, the "Commons" is – as its name alleges – a common area where students congregate, socialize, assemble, and engage in a variety of expressive activity.  The outdoor courtyard and back patio are similar and compatible with a variety of expressive activity which NWTC has permitted and, on numerous occasions, promoted.

ANSWER:    The allegations set forth in paragraph 60 constitute legal conclusions to which no response is required.  To the extent such allegations are deemed factual, Defendants deny.

61.    However, regardless of how NWTC has labeled these areas or whether they meet the standard of traditional public forums, NWTC has – by policy, practice, and intent – made these spaces available for expressive conduct on a recurring basis, and for conduct that is substantially more disruptive than Plaintiff's conduct on February 14, 2018.

ANSWER:    The allegations set forth in paragraph 61 constitute legal conclusions to which no response is required.  To the extent such allegations are deemed factual, Defendants deny.

62.    By virtue of the frequent use of such areas by students, staff, as well as visitors, and the robust variety of expressive conduct allowed (and encouraged) in these areas, NWTC

22

has, by practice and intent, established these areas as designated public forums, at least for NWTC students.

**ANSWER:** **The allegations set forth in paragraph 62 constitute legal conclusions to which no response is required. To the extent such allegations are deemed factual, Defendants deny.**

63. On information and belief, similar conduct and expressive activity occurs in many other indoor and outdoor areas across NWTC's approximately 100-acre campus. These examples show that there are numerous outdoor and indoor areas on NWTC's Green Bay campus, other than the prescribed Public Assembly Area, where expressive activity regularly takes place, does not disturb the learning environment, and in which expressive activity is therefore suitable. Under the Policy. (sic) However (sic), NWTC denies student expression in all of these areas.

**ANSWER:** **The allegations set forth in paragraph 63 constitute legal conclusions to which no response is required. To the extent such allegations are deemed factual, Defendants deny.**

64. NWTC has adopted policies (including but not limited to its Public Assembly Policy) and acted according to those policies in denying Ms. Olsen her right of freedom of speech and expression. The policies promulgated and enforced by NWTC have the effect of designating the overwhelming majority of the outdoor and indoor areas of NWTC's campus as non-public forums, quarantining free expression – including even the handing out of Valentine's Day cards on Valentine's Day – to a small area of campus.

**ANSWER:** The allegations set forth in paragraph 64 constitute legal conclusions to which no response is required. To the extent such allegations are deemed factual, Defendants deny.

65. By making only one small area known as the "Public Assembly Area," representing a tiny fraction of the area of NWTC's Green Bay campus, available for student expression, and forbidding student expression in all other areas of campus, the NWTC Public Assembly Policy is overbroad and provides extremely limited and insufficient alternatives for student speech.

**ANSWER:** Defendants deny.

66. On its face, the Policy is an unconstitutional abridgment of the rights of Plaintiff and other students' freedom of speech under the First and Fourteenth Amendments to the United States Constitution.

**ANSWER:** Defendants deny.

67. Plaintiff has a reasonable fear of prosecution and discipline under the Policy based on her desire to continue passing out Valentines outside the Public Assembly Area without submitting the required "Request to Reserve" and NWTC's past enforcement of the Policy against her.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 67 and therefore deny same.

68. By applying this Policy to Plaintiff's conduct on February 14, 2018, NWTC violated her rights to freedom of speech and expression under the First Amendment, as applied to the States through the Fourteenth Amendment.

**ANSWER:** Defendants deny.

69.     In so doing, each of the defendants acted under color of state law and in violation of clearly established constitutional rights of which any reasonable college officer should have been aware.

**ANSWER:     Defendants deny.**

*Answer to Second Claim of Relief – Violation of First and Fourteenth Amendment*
*(Facial Challenge – Prior Restraint and Overly Broad and Vague Standards for Approval)*

70.     Plaintiff incorporates by reference all previous paragraphs as if fully restated here.

**ANSWER: Defendants reiterate and reassert all previous paragraphs of their Answer as though set forth fully herein.**

71.     NWTC's Public Assembly Policy, on its face, is an unconstitutional prior restraint on freedom of speech and expression.

**ANSWER:     Defendants deny.**

72.     Students have a First Amendment right to engage in expressive activities in the public areas of a state college or university without advance permission from government officials.  *Widmar*, 454 U.S. at 267 n.5; *Papish v. Bd. of Curators of the Univ. of Mo.*, 410 U.S. 667 (1973).   Permit requirements are a prior restraint on speech, and there is a heavy presumption against their constitutionality.  *Berger v. City of Seattle*, 569 F.3d 1029, 1037 (9th Cir. 2009); *Jews for Jesus, Inc. v. City Coll. Of San Francisco*, 2009 U.S. Dist. LEXIS 1613, at *11-12 (N.D. Cal. Jan. 12, 2009).

**ANSWER:    The allegations set forth in paragraph 72 constitute legal conclusions to which no response is required.   To the extent such allegations are deemed factual, Defendants affirmatively state that the cases cited by the plaintiff speak for themselves and deny, under any interpretation of such cases, that Defendants violated any constitutional or statutory rights of the plaintiff.**

25

73.    Use of the Public Assembly Area requires a "request to reserve" which must be submitted to the NWTC Security Office.  (Exhibit E).  The request form requires the name of the group or individual making the request as well as a description of the activity requested.  The form contains no standards or guidelines by which NWTC reviews the request in considering whether to approve or deny it.  On their face, neither the Public Assembly Policy or the Public Assembly Request form limit the NWTC Security Office's discretion in denying or approving a request for any reason, including the content or viewpoint of the speaker or group's intended message.

**ANSWER:    Defendants admit that the NWTC Public Assembly Request form requests the name of the group or individual making the request to use the Public Assembly Area and a description of the activity requested.  Defendants further admit that the form does not contain any standards or guidelines by which NWTC reviews the request in considering whether to approve or deny it.  Defendants deny all remaining allegations set forth in, or implied by, paragraph 73.**

74.    Thus, the Policy fails to provide "narrow, objective and definite standards," which are necessary components of a constitutional of a (sic) permit requirement.  *See Shuttlesworth v. Birmingham*, 394 U.S. 147, 150 (1988).

**ANSWER:    Defendants deny that the Policy fails to provide narrow, objective and definite standards.  The remaining allegations set forth in paragraph 74 constitute legal conclusions to which no response is required.  To the extent such allegations are deemed factual, Defendants affirmatively state that the case cited by the plaintiff speaks for itself and deny, under any interpretation of such case, that Defendants violated any constitutional or statutory rights of the plaintiff.**

75.     Additionally, this requirement of prior approval is not a reasonable time, place or manner restriction in that it is imposed in all cases without limitation to circumstances in which prior approval or reservation is required.  It applies to any person or group, no matter how small, and without regard to whether the contemplated speech activity might interfere with other uses of the space or require the exclusion of other speakers.

**ANSWER:     Defendants deny.**

76.     Courts in Wisconsin have struck down similar permitting schemes requiring advance registration and approval of expressive conduct by small groups as overbroad and not narrowly tailored to serve a significant governmental interest.  (*See Kissick v. Huebsch*, 956 F. Supp. 2d 981 (W.D. Wis. 2013) (enjoining permit requirement in the Wisconsin State Capitol for events or demonstrations, even those involving only one person, because the permitting scheme was "not narrowly tailored to serve a significant governmental interest", and barring enforcement of the policy for events of 20 persons or less).

**ANSWER:     The allegations set forth in paragraph 76 constitute legal conclusions to which no response is required.  To the extent such allegations are deemed factual, Defendants affirmatively state that the case cited by the plaintiff speaks for itself and deny, under any interpretation of such case, that Defendants violated any constitutional or statutory rights of the plaintiff.**

77.     NWTC's Policy suffers from the identical defect.  The Policy restricts expressive conduct, even by a single individual, quarantining it to a meager speech zone that requires advance reservation.

**ANSWER:     Defendants deny the Policy is defective and deny the remaining allegations set forth in, or implied by, paragraph 77.**

78.     By requiring individuals and groups to provide their name and contact information, the NWTC Policy prohibits individuals and groups from engaging in anonymous speech.

**ANSWER:     Defendants deny.**

79.     The freedom to publish and speak anonymously is an aspect of the freedom of speech which receives broad protection by the First Amendment. *McIntyre v. Ohio Elections Com'n*, 514 U.S. 334 (1995); *Talley v. California*, 362 U.S. 60 (1960).

**ANSWER:     The allegations in paragraph 79 constitute legal conclusions to which no response is required.  To the extent such allegations are deemed factual, Defendants affirmatively state that the cases cited by the plaintiff speak for themselves and deny, under any interpretation of such cases, that Defendants violated any constitutional or statutory rights of the plaintiff.**

80.     The Policy also unconstitutionally prohibits students from engaging in spontaneous expression due to the requirement that they must seek permission before speaking.

**ANSWER:     Defendants deny the Policy prohibits students from engaging in spontaneous expression; deny the students are required to seek permission before speaking; deny the Policy is unconstitutional in any respect.**

81.     The Public Assembly Area is not open to spontaneous or anonymous speech because individuals and groups must fill out an application to use the space and identify themselves and their organizations prior to accessing the Public Assembly Area.

**ANSWER:     Defendants deny.**

82.     By requiring a permit application prior to accessing the Public Assembly Area in all cases, prohibiting anonymous speech, and failing to provide guidelines for approval of

request, NWTC's Public Assembly Policy abridges the First Amendment rights of Plaintiff and other NWTC students, and imposes a prior restraint on the freedom of speech of the Plaintiff and all NWTC students in violation of the First and Fourteenth Amendments to the United States Constitution.

**ANSWER:    Defendants deny.**

83.    Plaintiff has a reasonable fear of prosecution and discipline based on her desire to continue passing out Valentines outside the Public Assembly Area without submitting the required "Request to Reserve" and NWTC's past enforcement of the Policy against her.

**ANSWER:    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 83 and therefore deny same.**

84.    By applying this Policy to Plaintiff's conduct on February 14, 2018, NWTC violated her rights to freedom of speech and expression under the First Amendment, as applied to the States through the Fourteenth Amendment.

**ANSWER:    Defendants deny.**

85.    In doing so, each of the Defendants acted under color of state law and in violation of clearly established constitutional rights of which any reasonable college officer should have been aware.

**ANSWER:    Defendants deny.**

*Answer to Third Claim of Relief – Violation of First and Fourteenth Amendment*
*(Facial Challenge – Solicitation, Mass Distribution, Disruption)*

86.    Plaintiff incorporates by reference all previous paragraphs as if fully restated here.

**ANSWER:    Defendants reiterate and reassert all previous paragraphs of their Answer as though set forth fully herein.**

87.     NWTC's Public Assembly Policy provides that "Soliciting petitions or other attempts … to convey a message to a broad audience of people on college grounds outside of the public assembly area, will not be tolerated.

**ANSWER:    Defendants deny and affirmatively state that the Policy states, with emphasis added, "Soliciting petitions or other attempts <u>such as through excessive noise to protest, demonstrate, or engage in other types of activities with the intent</u> to convey a message to a broad audience of people on College grounds outside of the public assembly area, will not be permitted."**

88.     The Policy mandates that "picketing or displaying of signs" and "mass distribution of literature" occur only in the prescribed Public Assembly Area and with the appropriate "*request to reserve*".

**ANSWER:    Defendants deny.**

89.     The Policy provides that, "Any acts that are disruptive to the normal operations of the College including but not limited to classes and College business or violates the rights of others will not be tolerated."

**ANSWER:    Defendants admit this statement is included in the Policy and affirmatively state this statement must be read within the context of the entire Policy.**

90.     The Policy does not define "soliciting," "solicitation," "mass distribution," "literature," "picketing," "displaying," "disruptive," or "limited public forum."

**ANSWER:    Defendants admit these words are not defined in the Policy; Defendants deny all remaining allegations set forth in, or implied by, paragraph 90.**

91.    NWTC's Policy with respect to soliciting is vague and overbroad and serves to chill and restrict a wide variety of expressive conduct that would not be considered the type of "solicitation" that might be constitutionally restricted.

**ANSWER:    Defendants deny.**

92.    NWTC's policy with respect to "mass distribution" of literature is vague and overbroad and restricts a wide variety of expressive conduct that would not constitute the type of distribution of literature that might be constitutionally restricted.

**ANSWER:    Defendants deny.**

93.    NWTC's prohibition of speech that is "disruptive" is unconstitutionally vague and overbroad and restricts a wide variety of speech that cannot be constitutionally limited.

**ANSWER:    Defendants deny.**

94.    As such, NWTC's Public Assembly Policy unconstitutionally abridges the constitutional rights of Plaintiff and other NWTC students under the First and Fourteenth Amendments.

**ANSWER:    Defendants deny.**

95.    Plaintiff has a reasonable fear of prosecution and discipline based on her desire to continue passing out Valentines outside the Public Assembly Area without submitting the required "Request to Reserve" and NWTC's past enforcement of the Policy against her.

**ANSWER:    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 95 and therefore deny same.**

96.    By applying this Policy to Plaintiff's conduct on February 14, 2018, NWTC violated her rights to freedom of speech and expression under the First Amendment, as applied to the States through the Fourteenth Amendment.

**ANSWER:** **Defendants deny.**

97.    In so doing, each defendant acted under color of state law and in violation of clearly established constitutional rights of which any reasonable college officer should have been aware.

**ANSWER:** **Defendants deny.**

*Answer to Fourth Claim of Relief – Violation of First and Fourteenth Amendment*
*(As Applied Challenge – Overbreadth and Vagueness)*

98.    Plaintiff incorporates by reference all previous paragraphs as if fully restated here.

**ANSWER:** **Defendants reiterate and reassert all previous paragraphs of their Answer as though set forth fully herein.**

99.    Even if NWTC's Public Assembly Policy is not facially unconstitutional, NWTC's application of the Policy is unconstitutional as applied to the Plaintiff's specific conduct.

**ANSWER:** **Defendants deny.**

100.    Upon arriving at the General Studies Office, Security Officer Hagel informed Ms. Olsen that she was "soliciting" in violation of the Public Assembly Policy and that she was not allowed to hand out the Valentines.

**ANSWER:** **Defendants deny. Hagel informed the plaintiff she was soliciting and affirmatively state that Jandrin told the plaintiff that some people may consider her actions as soliciting and that it was not the reason he was having a conversation with the plaintiff.**

101.    The NWTC security report states that Plaintiff was disrupting the learning environment and in an area without permission and uninvited where students were not permitted to enter freely.

32

**ANSWER:** Defendants deny and affirmatively state that the NWTC security report states that Jandrin told the plaintiff that the reason for his discussion with her was for (possibly) disturbing the learning environment and for walking into an area that is restricted to students without being invited or announced.

102. None of these assertions are true.

**ANSWER:** Defendants deny and restate their denials to paragraphs 100 and 101 of the Complaint.

103. Plaintiff did not "solicit" any action on the part of any student or person. She simply handed Valentines to approximately ten persons. She did not force them on any person who did not wish to take one or entreat anyone who declined to take one to accept it. Her conduct did not constitute the type of "solicitation" or other conduct that can be constitutionally restricted.

**ANSWER:** Defendants deny.

104. The Valentine's contained no messages (such as obscene or defamatory statements or "fighting words") that would lawfully permit their restriction under the First Amendment.

**ANSWER:** Defendants admit the Valentine cards did not contain profanity or defamatory statements; Defendants deny all remaining allegations set forth in, or implied by, paragraph 104.

105. In no way did Ms. Olsen's passing out of Valentines disrupt the learning environment. She handed out Valentines in several different areas of the Student Center but did not hand out Valentines in any class, or in the library or anywhere that students were participating in the learning environment.

33

**ANSWER:** **Defendants deny.**

106. In particular, the General Studies Office area is not a learning environment. In fact, at the time Ms. Olsen entered that area on February 14, 2018, others were socializing in the area and discussing matters unrelated to school business. Therefore, Ms. Olsen's handing out of Valentines in that area cannot be said to have disrupted the learning environment.

**ANSWER:** **Defendants deny.**

107. The General Studies Office area contained no signage or other indication of restricted access, and Ms. Olsen had freely walked into and through the same area on numerous previous occasions without incident and without anyone telling her she was unwelcome or otherwise in a prohibited or restricted area. She has seen numerous other students do the same thing. Ms. Olsen regularly enters this area on school business, as well as for personal reasons, and is acquainted with the office staff and leadership.

**ANSWER:** **Defendants deny that the General Studies Office area contained no signage or other indication of restricted access. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in, or implied by, paragraph 107 and therefore deny same.**

108. Nor did Plaintiff engage in the "mass distribution" of literature in a way that can be constitutionally restricted.

**ANSWER:** **Defendants deny.**

109. Plaintiff's conduct in passing out roughly a dozen heart-shaped Valentines, approximately three inches by three inches in size or smaller, on Valentine's Day does not constitute "mass distribution of literature" in a way that can be constitutionally restricted.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation that the plaintiff passed out "roughly a dozen heart-shaped Valentines, approximately three inches by three inches in size or smaller;" Defendants deny all remaining allegations set forth in, or implied by, paragraph 109.**

110.    Prohibiting Plaintiff from passing out roughly a dozen heart-shaped Valentines of roughly three inches by three inches in size to a dozen friends and acquaintances on Valentine's Day because she did not submit the required "Request to Reserve" and limit her actions to the prescribed Public Assembly Area unconstitutionally restricted her rights of freedom of speech and expression.

**ANSWER:** **Defendants deny.**

111.    NWTC's action in enforcing its overbroad and vague Public Assembly Policy against Ms. Olsen on February 14, 2018, and preventing her from handing out religiously-themed Valentines on Valentine's Day outside of the prescribed "Free Speech Area" violated Plaintiff's right to freedom of speech under the First and Fourteenth Amendments.

**ANSWER:** **Defendants deny the Policy is overbroad or vague; Defendants deny all remaining allegations set forth in, or implied by, paragraph 111.**

112.    In so doing, each of the Defendants acted under color of state law and in violation of clearly established constitutional rights of which any reasonable college officer should have been aware.

**ANSWER:** **Defendants deny.**

*Answer to Fifth Claim of Relief – Violation of First and Fourteenth Amendment
(Content-based Discrimination)*

113.    Plaintiff incorporates by reference all previous paragraphs as if fully restated here.

**ANSWER:** Defendants reiterate and reassert all previous paragraphs of their Answer as though set forth fully herein.

114. The United States Supreme Court has held that States and state entities may not allow access to state property and facilities for the purposes of speech and expression and then restrict what speech or expression they permit based on its content. *Good News Club v. Milford Central School*, 533 U.S. 98 (2001). Similarly, public institutions may not prescribe policies related to speech and expression and then apply those policies differently based on the content of the speech or expression. *Rosenberger v. Rector and Visitors of University of Virginia*, 515 U.S. 819 (1995).

**ANSWER:** The allegations set forth in paragraph 114 constitute legal conclusions to which no response is required. To the extent such allegations are deemed factual, Defendants affirmatively state that the cases cited by the plaintiff speak for themselves and deny, under any interpretation of such cases, that Defendants violated any constitutional or statutory rights of the plaintiff.

115. The Valentine's Day cards Ms. Olsen handed out on February 14, 2018, were heart-shaped, on red paper, religiously-themed, and said things like; "You are special! 1 John 4:11," ["]God is love 1 John 4:11," ["]Jesus loves you! Romans 5:8," and "You are loved and cared for! 1 Peter 5:7."

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 115 and therefore deny same.

116. The Security Report completed by NWTC Security states that an unidentified person called Campus Security complaining about a female student "passing out Valentine's Day

cards with bible references on the cards".  The Report also notes that security personnel told Ms.

Olsen "some people may … find the message written on the card offensive."

**ANSWER:** **Defendants admit these statements are contained in the Security Report; Defendants deny all remaining allegations set forth in, or implied by, paragraph 116.**

117.    After receiving the call, NWTC Security Supervisor Jandrin sent Security Officer Hagel to locate Ms. Olsen and bring her to the Security Office.

**ANSWER:** **Defendants admit.**

118.    Jandrin and Hagel's actions in suppressing Ms. Olsen's freedom of speech and expression in handing out religiously-themed Valentine's Day cards were based, in part, on the religious content of the cards.

**ANSWER:** **Defendants deny.**

119.    Notwithstanding any purported violation of the Policy, Jandrin and Hagel discriminated against Ms. Olsen based upon the content of her speech and thus violated her freedom of speech under the First and Fourteenth Amendments to the United States Constitution.

**ANSWER:** **Defendants deny.**

120.    In so doing, each Defendant acted under color of state law and in violation of clearly established constitutional rights of which any reasonable college officer should have been aware.

**ANSWER:** **Defendants deny.**

## AFFIRMATIVE DEFENSES

As affirmative defenses to the plaintiff's Complaint, Defendants state:

1.    The plaintiff's Complaint fails to state a claim upon which relief may be granted.

2. The Northeast Wisconsin Technical College Public Assembly Policy referenced in the Complaint is, in all respects, constitutional.

3. Enforcement of the Northeast Wisconsin Technical College Public Assembly Policy referenced in the Complaint is, in all respects, constitutional.

4. All of the policies, procedures and practices of Defendants complained of in the plaintiff's Complaint are justified, reasonable and facially neutral time, place and manner restrictions.

5. The plaintiff's claims, in whole or in part, are precluded by the doctrine of unclean hands.

6. Due to the nature of Northeast Wisconsin Technical College's facilities and educational operations, none of its campuses or regional learning centers are traditional public forums.

WHEREFORE, Defendants Northeast Wisconsin Technical College District Board, H. Jeffrey Rafn and Colleen Simpson, in their official capacities as officers and employees of Northeast Wisconsin Technical College, Randy Schultz, Mike Jandrin and Jesse Hagel, in their personal capacities and official capacities as officers and employees of Northeast Wisconsin Technical College, and Carla Hedtke, Kim Schanock, Gerald Worrick, Cathy Dworak, David Mayer, Jeff Rickaby, Dorothy Sadowski, Richard Stadelman, and Ben Villarruel, in their official capacities as Members of the District Board of Northeast Wisconsin Technical College, demand judgment dismissing the plaintiff's claims with prejudice, denying each form of relief requested by the plaintiff, and ordering recovery of their costs, disbursements and attorney's fees.

Dated:  November 2, 2018.

/s/ Anthony J. Steffek
Anthony J. Steffek
State Bar No. 1053615
Kathy L. Nusslock
State Bar No. 1014027
Attorneys for Defendants
318 S. Washington Street
Suite 300
Green Bay, WI 54301
920.435.9378

OF COUNSEL:
Davis & Kuelthau, s.c.


Direct contact information:

| | |
|---|---|
| Anthony J. Steffek | 920.431.2237 direct dial |
| | 920.431.2277 direct fax |
| | asteffek@dkattorneys.com |
| | |
| Kathy L. Nusslock | 414.225.1447 direct dial |
| | 414.278.3647 direct fax |
| | knusslock@dkattorneys.com |